UNITED STATES of America,
Plaintiff-Appellee,

v.

Elmer DAVIS, Jr., Defendant-Appellant.

UNITED STATES of America,
Plaintiff-Appellee,

v.

Ralph WYNN, Jr., Defendant-Appellant.

Nos. 71–1637, 71–1638.

United States Court of Appeals,
Sixth Circuit.

April 24, 1972.

Paul E. Braden, Corbin, Ky. (Court appointed), for Elmer Davis, Jr.

Lowell W. Lundy, Barbourville, Ky. (Court appointed), for Ralph Wynn, Jr.

James E. Arehart, Asst. U. S. Atty., Lexington, Ky., for plaintiff-appellee; Eugene E. Siler, Jr., U. S. Atty., Lexington, Ky., on brief.

Before CELEBREZZE, MILLER and KENT, Circuit Judges.

WILLIAM E. MILLER, Circuit Judge.

On November 25, 1970 Elmer Davis, Jr. and Ralph Wynn, Jr. were tried by a jury on a charge of possessing an unregistered firearm (sawed-off shotgun) in violation of 26 U.S.C. § 5861(d). Statements previously given by each defendant were introduced into evidence at the joint trial. Neither defendant testified or offered evidence. The two defendants were convicted and sentenced to five years imprisonment. They appeal separately on different grounds.

The activity leading to the arrest of the appellants began in Detroit, Michigan. Davis and Wynn obtained an automobile, vehicle registration card, and credit cards from one Paul Hunter. The companions then drove through Ohio on their way to visit friends of Davis in Kentucky. According to statements later given by the men, the car had a flat tire in Ohio, and when they opened the car trunk to get the spare tire, they discovered and examined a sawed-off shotgun. After arriving in Kentucky, the appellants spent several days visiting various people.

On June 11, 1969, they drove to the house of Enos Banks. Earlier that day, Davis had made disparaging remarks about Banks. Davis and Banks began to argue and according to Banks' testimony, Wynn reached into the open car trunk, pulled out the shotgun and pointed it at him. Banks claims that he then left and went to his brother-in-law's house to get a pistol. He later observed Wynn carrying the weapon into the building which was sectioned into several apartments, including Banks'. Apparently some occupant of the building threw the weapon out a window where it was later retrieved by a child and given to police.

About 9:30 P.M. in the evening following the incident with Banks, state police arrested Davis and Wynn on a suspicion of automobile theft. The suspects were detained in the Perry County jail near Hazard, Kentucky. Later that night the police notified the nearest federal agents, located 80 miles away in Pineville, Kentucky, of possible firearms and Dyer Act violations. Sometime during the following morning, June 12, 1969, a federal agent came to Hazard from Pineville. After advising the suspects of their rights, the agent interviewed the men and took statements from each suspect before noon that day. On June 13, 1969, the men were taken before the part-time United States Magistrate in Pineville.

I

In appealing his conviction, appellant Davis advances three allegations of error. First, it is suggested that an inadequate *Miranda* warning was given; second it is contended that an unnecessary delay occurred before he was taken before a United States Magistrate; and third, it is alleged that there was no independent corroboration of the admission introduced against him.

■ Concerning the *Miranda* warning, appellant suggests that he was not clearly apprised of the fact that he could terminate any questioning, even after the questioning had begun, and request

counsel at that time. Consequently, it is argued, there was no intelligent waiver of rights. This contention is without merit. The statement given by Davis begins with a recitation of rights and a waiver of those rights.[1] In relevant part, that recitation states: "I understand that I have the right to remain silent and that I may invoke this right, or the right to consult a lawyer, at any time." While we could devise a more explicit statement declaring a suspect's right to rescind a waiver of rights and end questioning at any time, we conclude that the challenged statement provides an adequate and understanding apprisal of rights.

Appellant next contends that under Rule 5(a), Federal Rules of Criminal Procedure, the delay in taking him before a United States Commissioner was unreasonable and that therefore the district court should have excluded any statement made during this detention.[2] The United States responds that since the statement was made within a couple of hours after the federal agent arrived at the jail, the delay was not unreasonable.

While the record is not precisely clear, the agent did arrive at the Perry County jail during the morning of June 12, 1969. Sometime before noon that day, Davis made his statement. There is no indication that appellant's statement was made involuntarily. Nor is there present here a lengthy interrogation which might suggest an invalid waiver of rights.[3] Appellant's argument is that his statement should be excluded solely because of the delay in taking him before a commissioner.[4]

In Mallory v. United States, 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479 (1957), the Supreme Court in an application of procedural Rule 5(a) made clear that a statement taken during an "unnecessary delay" in arraignment was inadmissible as evidence. But the relevant period of delay is measured

---

1. "My name is Elmer Davis, Jr. Before I made this statement, I was advised by Special Investigator E. W. Easley of my right to remain silent; that anything I say can be used against me in court or other proceedings; that I may consult with an attorney before making any statement or answering any questions and have him present with me during questioning; and that I can have an attorney assigned by the U. S. Commissioner or the Court to represent me if I cannot afford or otherwise obtain one. I understand that I have the right to remain silent and that I may invoke this right, or the right to consult a lawyer, at any time, and I hereby waive the right to remain silent and freely and voluntarily make this statement without consulting an attorney or having one present during the making of this statement."

2. Rule 5(a) reads as follows:
(a) *Appearance before the Commissioner.* An officer making an arrest under a warrant issued upon a complaint or any person making an arrest without a warrant shall take the arrested person without unnecessary delay before the nearest available commissioner or before any other nearby officer empowered to commit persons charged with offenses against the laws of the United States. When a person arrested without a warrant is brought before a commissioner or other officer, a complaint shall be filed forthwith.

3. Concerning this possibility, the Court in Miranda v. Arizona, 384 U.S. 436, 476, 86 S.Ct. 1602, 1629, 16 L.Ed.2d 694 (1966), stated:
Whatever the testimony of the authorities as to waiver of rights by an accused, the fact of lengthy interrogation or incommunicado incarceration before a statement is made is strong evidence that the accused did not validly waive his rights. In these circumstances the fact that the individual eventually made a statement is consistent with the conclusion that the compelling influence of the interrogation finally forced him to do so. It is inconsistent with any notion of a voluntary relinquishment of the privilege.

4. In Pettyjohn v. United States, 136 U.S. App.D.C. 69, 419 F.2d 651, 656, (1969), the District of Columbia Circuit held:
We find that appellant, by validly waiving his *Miranda* right to silence and an attorney, and by agreeing to speak with the police, has thereby also waived any *Mallory* right to be brought before a magistrate "as quickly as possible."

from the time of arrest to the giving of the statement, and a period of illegal detention following the statement will not nullify a "prompt acknowledgement by an accused of his guilt. . . ." United States v. Mitchell, 322 U.S. 65, 64 S.Ct. 896, 88 L.Ed. 1140 (1944). Congress modified the *Mallory* rule of evidence by statute. 18 U.S.C. § 3501(c). Under this statute a person's confession "shall not be inadmissible solely because of delay in bringing such person before a magistrate . . . if such confession is found by the trial judge to have been made voluntarily and if the weight to be given the confession is left to the jury and if such confession was made or given by such person within six hours immediately following his arrest or other detention. . . ."

■ Here, the appellant was arrested by state police on a suspicion of theft of an automobile. While the appellants had been held overnight in the county jail prior to the interview, there was no detention of the suspects by federal agents until the following morning. In applying Rule 5(a), we previously have indicated that ordinarily the relevant delay is measured from the commencement of federal detention. This rule applies where there is no proof of a "working arrangement" between state police and federal agents "for the purpose of aiding and abetting the federal officers in carrying on interrogation of the suspect in violation of Federal Rule 5(a) requiring prompt arraignment. . . ." United States v. Hindmarsh, 6 Cir., 389 F.2d 137, 146 (1968). Similarly, we think any delay for purposes of § 3501(c) must be measured from the beginning of the federal detention.

■ There is no suggestion here of a working arrangement between federal and state authorities. It is apparent that the statements were made well within six hours following the federal detention. And since mere delay is the sole basis for the contention that the confession is inadmissible, that contention must fail under § 3501(c).

■ Finally, appellant Davis argues that there was no independent corroboration of his extrajudicial admission made after commission of the crime. It is well established that a conviction must rest upon a firmer foundation than the mere confession of the accused. Opper v. United States, 348 U.S. 84, 75 S. Ct. 158, 99 L.Ed. 101 (1954); Smith v. United States, 348 U.S. 147, 75 S.Ct. 194, 99 L.Ed. 192 (1954). The corroboration requirement applies equally to an accused's admission of essential facts or elements of the offense subsequent to the crime. Opper v. United States, *supra*, 348 U.S. at 90, 75 S.Ct. 158. The purpose of the corroboration principle is to prevent "errors in convictions based upon untrue confessions alone." Warszower v. United States, 312 U.S. 342, 347, 61 S.Ct. 603, 606, 85 L.Ed. 876 (1941).

The facts admitted in Davis' statement suggest that the appellant exercised such dominion and control over the weapon so as to constitute actual possession.[5] Davis argues that the

5. "On Friday night, June 6, 1969, I was with Ralph Wynn at the Marble Bar at Brooklyn & Hancock in Detroit, Michigan. I saw Paul Hunter and his mouth was bloody. We started talking and Paul said that somebody had hit him in the mouth. He said he was going to shoot somebody's ass. We then went down in the basement of a place where all the wino's go to drink. We was all drinking and pretty drunk. I asked Paul if I could borrow his car to go get some girls. He gave me the keys to his car and I asked him for the registration card too and he gave it to me. Me and Ralph got in the car and left. We looked in glove compartment and found some credit cards. We then decided to go to Hazard.

On the way to Hazard, when we was somewhere close to Cincinnati, Ohio, we had a blowout. We was at Lebanon, Ohio. When I opened the trunk of the car to get the spare, I took the spare out. Under it was a sawed-off shotgun. The shotgun was not mine and this was the first time I had ever seen it. I picked it up and showed it to Ralph and then put it back where it was.

statement is uncorroborated because the independent evidence by itself does not establish that he had either actual or constructive possession of the weapon. But "corroborative evidence does not have to prove the offense beyond a reasonable doubt, or even by a preponderance, as long as there is substantial independent evidence that the offense has been committed, and the evidence as a whole proves beyond a reasonable doubt that defendant is guilty." Smith v. United States, *supra*, 348 U.S. at 156, 75 S.Ct. at 199.

Even though the independent evidence need not actually establish the offense, the prosecution must introduce substantial evidence tending to show that Davis possessed the shotgun.[6] As the Supreme Court stated:

> All elements of the offense must be established by independent evidence or corroborated admissions, but one available mode of corroboration is for the independent evidence to bolster the confession itself and thereby prove the offense "through" the statements of the accused. Id., at 156, 75 S.Ct. at 199.

The essential facts admitted by Davis are that he knew that the weapon was in the car he was driving and that he handled the weapon at various times. Here, the extrinsic proof of possession implicates the appellant and strongly suggests a clear connection between Davis and the weapon. Davis and Wynn drove the car to Banks' house. Banks had seen Davis driving the car. Another witness, Jenkins, had seen Davis driving the car prior to the incident at Banks' house. Davis and Banks argued and Wynn pulled the shotgun from the trunk of the car and pointed it at Banks. The trunk was already open so that Wynn needed only to reach into the trunk and take the weapon.

From these facts a jury could reasonably infer that Davis knew that the weapon was in the car he was driving and that he intended to exert dominion over the weapon. The extrinsic evidence here clearly corroborates the admissions. "It is sufficient if the corroboration supports the essential facts admitted sufficiently to justify a jury inference of their truth." Opper v. United States, 348 U.S., at 93, 75 S.Ct., at 164.[7]

---

> We came on to Hazard, Kentucky. We go to Hazard on June 7, 1969. We visited some of my friends in and around Perry County.
> On Wednesday, June 11, 1969 I was visiting some friends at Scratchback, Kentucky. I got into an argument with a man who lives next door. His name Ennis Banks. He pulled out a 38 Pistol and then I went to the trunk of Paul Hunter's car and got the sawed-off shotgun. The trouble with Banks settled down some and Ralph told me to hide the shotgun. I hid it down by the creek.
> I needed to get some universal joints put in Paul's car so I left and came to Hazard. Before I left, I went out and got the shotgun and gave it to Ralph. That is the last time I have seen the shotgun.
> I related to Mr. Easley the facts in the foregoing statement consisting of two pages which I have initialed or signed. I have been given an opportunity to make corrections and I have initialed each correction made. This

> statement is true and correct. I have made this statement of my own free will and accord, without being threatened, injured, or intimidated and without having been promised any reward or immunity."
>
> Signed "Elmer Davis."

6. Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963), held that a co-defendant's extrajudicial statement does not constitute admissible evidence corroborating the admission of a defendant. Thus Wynn's statement is not admissible against Davis either to corroborate his admission or to convict him.

7. The statements of Davis and Wynn are inconsistent on one point. Each appellant stated that he went to the trunk of the car and got the shotgun, but neither admitted pointing the weapon at Banks. Also, Davis' statement conflicts with Banks' testimony in that Davis claims that Banks first pulled a gun. We do not think these inconsistencies can be said to deny the truthfulness of the essential facts admitted.

## II

We turn now to the case of the other appellant, Ralph Wynn, Jr. This appellant argues that the introduction into evidence of co-defendant Davis' extrajudicial admission inculpating Wynn violated the rule of Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), and requires the reversal of Wynn's conviction. At trial, counsel for Wynn did not object to the introduction into evidence of Davis' statement, but asked that the jury be instructed not to consider the statement in determining Wynn's guilt or innocence. The district court complied with this request, and Wynn's counsel expressed satisfaction.

On appeal, Wynn maintains that the court's conduct was reversible error. Ordinarily, of course, a Court of Appeals will not review the conduct of the trial court unless a party makes known to the trial court the action objected to and the grounds for the objection. Rule 51, Federal Rules of Criminal Procedure. Apparently, appellant urges that the trial court's conduct constituted an error affecting substantial rights and thus should be recognized as "plain error." Rule 52(b), Federal Rules of Criminal Procedure. The Bruton rule, applied retroactively in Roberts v. Russell, 392 U.S. 293, 88 S.Ct. 1921, 20 L.Ed.2d 1100 (1968), seeks to avoid a serious flaw in the fact-finding process at trial. Any violation of that rule might, therefore, present an appropriate occasion for the recognition of a plain error.

█ But even assuming a violation of the Bruton rule in the instant case, (raised only by appellant Wynn) such violation would be harmless error.[8] Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969). The evidence against Wynn was overwhelming. There was his own statement admitting facts constituting possession. Witness Banks testified that

Wynn at one time stated that he had a shotgun and at another time grabbed the shotgun and pointed it at Banks. Witness Jenkins saw Wynn in the back seat of the car holding the shotgun. When Wynn was arrested, he had a shotgun shell in his pocket. On the basis of this record, we conclude that Wynn would have been convicted without the admission of Davis' statement and that if any error occurred, it was indeed harmless "beyond a reasonable doubt." Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

Affirmed.

---

8. Even if the Bruton rule had been urged by appellant Davis, we think that any error in admission of Wynn's admission would have been harmless in view of the strength of the evidence against him.