**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Walter Joseph WATSON, Jr., a/k/a Joe Watson, a/k/a "Black Joe", Defendant-Appellant.**

**No. 78–5392**
**Summary Calendar.***

United States Court of Appeals, Fifth Circuit.

March 21, 1979.

* Rule 18, 5 Cir.; *see Isbell Enterprises, Inc. v. Citizens Casualty Company of New York et al.,* 5 Cir., 1970, 431 F.2d 409, Part I.

**1060**

Roland E. Dahlin, II, Federal Public Defender, Karen K. Brown, Asst. Federal Public Defender, Houston, Tex., for defendant-appellant.

J. A. Canales, U. S. Atty., John M. Potter, George A. Kelt, Jr., Carl Walker, Jr., James R. Gough, Asst. U. S. Attys., Houston, Tex., for plaintiff-appellee.

Before COLEMAN, FAY and RUBIN, Circuit Judges.

PER CURIAM:

Appellant Walter Watson, Jr., was tried before a jury on a two-count indictment relating to the robbery of Citizen's Bank of Bryan, Texas in January, 1978.[1] From his conviction on both counts, he appeals. Appellant raises several points on appeal. He urges: 1) that the district court erred in denying the motion to suppress his confession because the statement was involuntary, 2) that the statement should be suppressed as plea-related under Rule 11(e) of the Federal Rules of Criminal Procedure, 3) that the trial court erred in not suppressing Watson's confession due to a four and one-half day delay in bringing Watson before a federal magistrate, and 4) that the district court erred by denying a defense motion for mistrial after a government witness, on the stand, raised a Fifth Amendment claim and refused to testify. For reasons more fully set forth below, we affirm.

1. Count I charged appellant with taking $16,-396.75 by force, violence and intimidation from a federally insured bank in violation of 18 U.S.C. § 2113(a). Count II charged that appel-

## FACTS

Taking the evidence in a light most favorable to the government, *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942), the pertinent facts are as follows.

On January 16, 1978, the Citizens Bank of Bryan, Texas, federally insured by the Federal Deposit Insurance Corporation, was robbed of over sixteen thousand dollars. On March 2, 1978, pursuant to an arrest warrant for aggravated robbery and attempted murder, officers Wentrcek and Copeland of the Bryan Police Department arrested Watson and brought him to the Bryan police station. Watson was "booked" and brought before Justice of the Peace Bill Dewey, Jr. where he was administered the "magistrate's warning." When Watson was returned to the police station, FBI Special Agent Robert Wiatt was present. Wiatt had been working on this case since the robbery, and had obtained a federal warrant for Watson's arrest six days after the robbery. The events which transpired upon Watson's return to the Bryan Police Department were the subject of conflicting testimony. It is clear, however, that Watson evidenced great fear with respect to the state charges against him and he continually expressed his desire that he be handled federally. Watson claims that his confession was based upon assurances that, if he cooperated with the FBI, his state charges would be dismissed. Watson also testified that District Attorney Searcy told him that if he didn't cooperate with the FBI, Searcy would guarantee fifty years imprisonment on the state charges. Agent Wiatt testified that, upon hearing of Watson's fear of the state charges, he summoned Searcy who said that he would consider dropping the state charges in exchange for Watson's cooperation with the FBI. Wiatt claims to have made it perfectly clear that there was no way they could guarantee that result. Watson ultimately confessed. That confession was used against him in the instant case, and is the subject of this appeal.

lant did this act with force and violence by assaulting bank teller Ann Wooten with a firearm in violation of 18 U.S.C. § 2113(d).

## I. THE CONFESSION

 Watson claims that his confession was involuntary and that therefore, it should have been suppressed. Determinations of voluntariness require credibility determinations to be made by a trial judge. *United States v. Ballard*, 586 F.2d 1060, 1834 (5th Cir. 1978). Absent clear error, this court will not upset a trial court's determination that a confession was voluntarily given. *United States v. Greer*, 566 F.2d 472 (5th Cir. 1978). Here, there is ample evidence in the record to support the trial court's finding that defendant's confession was freely given. Accordingly, reversal on grounds of involuntariness of the confession would be inappropriate.

 Watson also urges that the confession should be suppressed because it was given in the context of plea negotiations and therefore is inadmissible under Rule 11(e)(6) of the Federal Rules of Criminal Procedure. But as this court recently noted,

"A plea of guilty differs in purpose and effect from a mere admission or an extrajudicial confession; it is itself a conviction." A confession only relates a set of facts and, therefore, requires only a knowledge of the factual situation. A guilty plea is something more; it is an admission of all the elements of the crime charged. While all guilty pleas are confessions, not all confessions are guilty pleas. Therefore, it follows that not all confessions are plea negotiations.

We are not suggesting that confessions or admissions made in the course of plea negotiations are admissible under the law of confessions. Such an approach would eviscerate Fed.R.Crim.P. 11(e)(6) and Fed.R.Evid. 410. However, confessions or admissions which are either made in the absence of plea negotiations or which are wholly independent from any plea negotiations are still admissible. Generally, a person who has been fully advised of his rights may make a full or partial admission to the arresting officers. Such a statement, if otherwise admissible under the general law of confessions, still is admissible despite the fact that the accused makes some request of those in charge. Such a request, without more, does not transform a confession into a plea negotiation.

*United States v. Robertson*, 582 F.2d 1356, 1368 (5th Cir. 1978) (en banc) (citations omitted). Thus, assuming arguendo that in fact a deal had been worked out whereby Watson agreed to "cooperate" in return for dropping of the state charges, his confession made in the course of his cooperation would be admissible as he was not, and did not, evince any intention to plead guilty. Rather, he evinced only his contemplation of "cooperating." Bound by *Robertson*, we reject Watson's argument.[2]

 Appellant next contends that the confession should not have been admitted because of the 4½ day delay in bringing him before a federal magistrate. Under the provisions of 18 U.S.C. § 3501(c), a confession will not be inadmissible solely because of a delay in being brought before a magistrate if the confession is found by the trial judge to be voluntary, the weight of the confession is left to the jury, and the confession was made within six hours following arrest. *United States v. Greer*, 566 F.2d 472, 474 (5th Cir. 1978); 18 U.S.C. § 3501(c) (1976). Moreover, delay under 18 U.S.C. § 3501(c) is to be measured from the

---

2. In *United States v. Robertson, supra*, this court recognized that such confession bargaining is relevant to the issue of whether or not a confession is voluntary. 582 F.2d at 1363 n. 14. In cases such as this, where there was confession bargaining, the judge should inform the jury that it may consider the bargaining together with all of the other facts and circumstances on the issue of the voluntariness of the confession. Although the judge in this case did not specifically single out the bargaining for the jury's attention, he did instruct the jury that it was to subject the circumstances surrounding the confession to careful scrutiny in order to determine whether the confession was voluntary, and his other instructions did not preclude its consideration of this evidence. The instructions were sufficient to assure the defendant that the jury would fairly consider his contention that the confession was not voluntarily made.

beginning of federal detention. *United States v. Rollerson*, 491 F.2d 1209 (5th Cir. 1974).

With these rules in mind, Watson's delay claim must fail for at least two reasons. First, his statement was made within the six hour time limit of 18 U.S.C. § 3501(c). Second, Watson was not turned over to the United States Marshal until well after his statement was redacted and signed. As he was in state custody, and as there is no suggestion of an improper state-FBI working arrangement, he could not possibly have been brought to the federal magistrate earlier in time. Moreover, at the time the 18 U.S.C. § 3501(c) clock started running, i. e. when Watson was delivered to the United States Marshal, his statement was already history. Thus, his delay claim must fail.

## II. WITNESS' PRIVILEGE PLEA

At trial, the Government called Donald McCoy, a cousin of the appellant. When McCoy was asked if, on January 16, 1978, he had seen Johnny Lewis (whose car had allegedly been used in the robbery), McCoy replied "Like, I would like, your Honor, to take the 5th Amendment."

The jury was immediately excused, and Judge Cowan questioned McCoy briefly as to his intentions in invoking the Fifth Amendment. So that the witness might make an intelligent decision regarding his testimony, the Court asked the prosecution its questions intended for McCoy. The subsequent colloquy revealed McCoy's concern that, by testifying, he would render himself liable for prosecution on charges of aiding and abetting or for perjury. The Government's attorney stated unequivocally, however, that McCoy was not a target of the prosecution and denied any foreknowledge that McCoy might take the Fifth Amendment.

Because McCoy's testimony was not considered critical, the court sustained McCoy's plea. After denying appellant's motion for mistrial, the court recalled the jury and instructed them to disregard the presence of McCoy for all purposes.

█ In this Circuit, the burden is on the defendant to show that he was prejudiced by a prosecutor calling a witness who then invokes the Fifth Amendment. *Lawrence v. Wainwright*, 445 F.2d 281, 282 (5th Cir. 1971). In the leading case of *Namet v. United States*, 373 U.S. 179, 83 S.Ct. 1151, 10 L.Ed.2d 278 (1962), where the prosecution was aware that its witnesses would exercise their privilege against self-incrimination, the Supreme Court noted that trial courts will be reversed in two circumstances where a witness claims the privilege. One is in the case of a conscious and flagrant effort by the prosecution to build a case based on the unfavorable inferences which inure from a claim of the privilege. The other is where the inference adds critical weight to the government's case in a form not subject to cross-examination. *Namet v. United States*, 373 U.S. 179, 186–91, 83 S.Ct. 1151, 10 L.Ed. 278 (1963); *United States v. Jenkins*, 442 F.2d 429, 435 (5th Cir. 1971).

█ Neither of these circumstances was present here. There was no showing that the prosecutor knew that the witness would invoke the Fifth Amendment. To the contrary, Judge Cowan specifically found that the prosecutor did not know that the witness would invoke the privilege. Moreover, there was no "critical weight" to the government's case in a form not subject to cross-examination. In any event, Judge Cowan's immediate removal of the jury coupled with his instruction to disregard all of McCoy's testimony sufficiently cured any prejudice which may have resulted.

The conviction is AFFIRMED.