UNITED STATES of America,
Plaintiff-Appellee,

v.

Charles Frederick WOODS,
Defendant-Appellant,

and

UNITED STATES of America,
Plaintiff-Appellee,

v.

Gerald Keith UNDERWOOD,
Defendant-Appellant.

Nos. 78–5206, 78–5207.

United States Court of Appeals,
Sixth Circuit.

Argued Dec. 7, 1978.

Decided Jan. 3, 1980.

Peter F. Manning, Louisville, Ky. (Court Appointed), for Charles Woods.

Samuel G. Hayward, Louisville, Ky. (Court Appointed), for Gerald Underwood.

Albert Jones, U. S. Atty., James H. Barr, C. Fred Partin, Asst. U. S. Attys., Louisville, Ky., for the U. S.

Before CELEBREZZE, KEITH and MERRITT, Circuit Judges.

CELEBREZZE, Circuit Judge.

Charles Frederick Woods and Gerald Keith Underwood appeal from jury convictions on a two-count indictment charging them with armed bank robbery in violation of 18 U.S.C. § 2113(a) and (d).[1] The defendants were tried jointly and each was sentenced to twenty-five (25) years imprisonment.[2] They appeal separately on overlapping grounds.

In appealing their federal convictions for the August 26th bank robbery, the defendants contend that the district court erred in 1) denying defendant Woods' motion to suppress an oral statement he made to F.B.I. agents; 2) failing to grant a mistrial or issue cautionary instructions to the jury because of prejudicial remarks by the prosecutor in his opening statement; 3) allowing evidence unconnected to the bank robbery for which defendants were on trial to remain in the courtroom; 4) failing to instruct the jury on the definition of evidence; and 5) denying defendant Underwood's motion for acquittal on grounds of insufficient evidence. After a careful review of the record, we are of the view that the defendants' contentions are without merit and that their convictions should be affirmed.

---

[1]. 18 U.S.C. § 2113 provides in pertinent part:

§ 2113 BANK ROBBERY AND INCIDENTAL CRIMES

(a) Whoever, by force and violence, or by intimidation, takes, or attempts to take, from the person or presence of another any property or money or any other thing of value belonging to, or in the care, custody, control, management, or possession of, any bank, credit union, or any savings and loan association; or

\* \* \* \* \* \*

(d) Whoever, in committing or in attempting to commit, any offense defined in subsections (a) and (b) of this section, assaults any person, or puts in jeopardy the life of any person by the use of a dangerous weapon or device, shall be fined not more than $10,000 or imprisoned not more than twenty-five years, or both.

[2]. The sentences were imposed to conviction on the count of the indictment charging a violation of subsection (d), with the count charging a violation of subsection (a) merging therein.

## FACTS

On August 26, 1977, the Algonquin Branch of the Bank of Louisville in Louisville, Kentucky, a federally insured institution, was robbed by three men wearing ski masks, jumpsuits, and goggles. Two of the men entered the bank armed with a pistol and a sawed-off shotgun while the third man waited outside the bank in the getaway car. At the time of the robbery defendant Woods was wanted by the Louisville Police Department in connection with several local holdups in violation of state law. Since the modus operandi of the Bank of Louisville robbery was similar to that of one of the state armed robberies,[3] Woods became a suspect in the August 26th bank robbery.

On September 29, 1977, Agent Thomas P. McWade of the Federal Bureau of Investigation [hereinafter F.B.I.] informed detective Donald Camfield of the Louisville Police Department of Woods' possible whereabouts and asked if the Louisville Police wanted to accompany the F.B.I. on their attempt to verify this information. Subsequently, four Louisville Police officers and two F.B.I. agents arrived at Woods' apartment where the Louisville authorities arrested Woods for two of the local holdups. At the time of his arrest, Woods told the officers that he had driven the getaway car in the Louisville Bank robbery. Woods' description of the robbers' disguise and the getaway car matched that given by witnesses at the bank. He was arrested by Louisville authorities later in the day for this offense.

Woods also stated that after the bank robbery the robbers had gone to a residence at 244 South 41st Street and that the police could find the sawed-off shotgun used during the robbery at that location. 244 South 41st Street was defendant Underwood's residence. A search of the premises uncovered a loaded sawed-off shotgun, two loaded .38 caliber revolvers, and a jumpsuit.

On September 30, 1977, Woods was arraigned in the Louisville Police Court for the sundry armed robberies, including the Bank of Louisville robbery. At that time the state court appointed a lawyer to represent Woods with respect to the state offenses. On October 7, 1977, Woods was reinterviewed by local and federal authorities. He then stated that he was the robber armed with the pistol inside the bank rather than the one who waited outside in the getaway car.

Woods and Underwood were subsequently indicted by a federal grand jury and charged, along with a third codefendant, with violations of 18 U.S.C. § 2113(a) and (d). Both were later convicted by a federal jury of the August 26th armed robbery of the Bank of Louisville.

## I

Woods' first allegation of error centers around his statement to the F.B.I. agents on October 7, 1977, wherein he admitted entering the Bank of Louisville with a pistol. Woods argues that the district court should have suppressed this statement because of unnecessary delay in taking him before a magistrate on the federal charge. The evidence shows that Woods was arrested by the Louisville authorities on September 29 for violations of state law. At the time of his interview by federal authorities on October 7 he was still in state custody in connection with the state offenses for which he was originally arrested. Initiation of formal federal criminal procedures against Woods for the bank robbery began with his indictment by a federal grand jury on November 9 and his arraignment on November 14. Woods claims that the F.B.I. circumvented Rule 5(a)[4] of the Rules of

3. It appears that similar to the modus operandi used in the bank robbery, the Consolidated Sales Company, 1407 West Jefferson, Louisville, Kentucky, was held up by four armed robbers wearing ski masks, goggles and jumpsuits. It also appears that the robbers used a stolen vehicle in each instance to get to and away from the place of robbery.

4. Rule 5(a), F.R.Crim.P. provides:
   INITIAL APPEARANCE BEFORE THE MAGISTRATE

Criminal Procedure for the District Courts by not arresting him on federal charges and, instead, interrogating him while he was in the custody of the local police.[5]

In *United States v. Davis*, 459 F.2d 167, 170 (6th Cir. 1972), this court stated:

In applying Rule 5(a), we previously have indicated that ordinarily the relevant delay is measured from the commencement of federal detention. This rule applies where there is no proof of a "working arrangement" between state police and federal agents "for the purpose of aiding and abetting the federal officers in carrying on interrogation of the suspect in violation of Federal Rule 5(a) requiring prompt arraignment . . ." *United States v. Hindmarsh*, 389 F.2d 137, 146 (6th Cir. 1968) *cert. denied*, 393 U.S. 866, 89 S.Ct. 150, 21 L.Ed.2d 134. Similarly, we think any delay for purposes of § 3501(c) must be measured from the beginning of the federal detention.

Subsequently, the fifth circuit in *United States v. Rollerson*, 491 F.2d 1209 (5th Cir. 1974), capsulized the type of delay proscribed by Rule 5(a) and the nature of the relationship between federal and local authorities which will trigger application of the rule:

*Mallory* [*v. United States*, 1957, 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479] and Section 3501(c) were carefully considered by the Sixth Circuit in *United States v. Davis*, 1972, 459 F.2d 167.

There the court found that the delay in being brought before a magistrate must be measured from the beginning of *federal* detention. . . . We agree. Since Rollerson was in state custody during the time of the interview by the federal investigator, for Rollerson to prevail it is incumbent upon him to demonstrate an illegitimate "working relationship" between the state and federal authorities. . . . That is, in order to invoke the protection of Section 3501(c), he must show that the state officials unlawfully detained him in order to allow the federal investigator to secure a confession.

491 F.2d at 1212 (Footnotes omitted). *See United States v. Greer*, 566 F.2d 472, 474 (5th Cir.), *cert. denied*, 435 U.S. 1009, 98 S.Ct. 1881, 56 L.Ed.2d 391 (1978) (relied on *Rollerson, supra*); *United States v. Halbert*, 436 F.2d 1226, 1229 (9th Cir. 1970); *United States v. Chadwick*, 415 F.2d 167, 170 (10th Cir. 1969);[6] *United States v. Hindmarsh*, 389 F.2d 137, 146 (6th Cir.), *cert. denied*, 393 U.S. 866, 89 S.Ct. 150, 21 L.Ed.2d 134 (1960).

While the evidence clearly demonstrates a "working relationship" between local and federal authorities in this case, there is no evidence which indicates that this relationship was "illegitimate," or that "the state officials unlawfully detained [Woods] in order to allow the federal investigator to secure a confession." *Rollerson*, 491 F.2d at

**5.** While two federal agents accompanied the Louisville authorities at the time of Woods' initial arrest on September 29th, the record reveals that they never, neither then nor thereafter, arrested him. It appears that no federal warrant was ever taken out for Woods' arrest in connection with the August 26th bank robbery. Initiation of formal federal criminal procedures against Woods for the bank robbery began with his indictment by a federal grand jury on November 9th and his arraignment on November 14th.

**6.** The Court notes that *United States v. Chadwick, supra*, also contains dicta suggesting that Rule 5 is triggered by the existence of probable cause to arrest. The plain language of Rule 5 requires this Court to disavow any such suggestion. See also *Chadwick, supra* at 173–174 (Lewis, J., concurring in the result).

In General. An officer making an arrest under a warrant issued upon a complaint or any person making an arrest without a warrant shall take the arrested person without unnecessary delay before the nearest available federal magistrate or, in the event that a federal magistrate is not reasonably available, before a state or local judicial officer authorized by 18 U.S.C. § 3041. If a person arrested without a warrant is brought before a magistrate, a complaint shall be filed forthwith which shall comply with the requirements of Rule 4(a) with respect to the showing of probable cause. When a person arrested with or without a warrant or given a summons, appears initially before the magistrate, the magistrate shall proceed in accordance with the applicable subdivisions of this rule.

1212. As the court noted in *Greer*, 566 F.2d 472, "while there is evidence of federal-state cooperation, there is no suggestion that the state custody was a result of an improper working arrangement with the F.B.I." *Id.* at 474. Furthermore, there is no indication that Woods' statement to the F.B.I. was made involuntarily.[7]

■ Nevertheless, defendants ask this court to extend the holding of *Massiah v. United States*, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964), to cover the situation where counsel is state appointed respecting a state offense and where *Miranda* warnings have acquainted the defendant with his right to the presence of counsel and where defendant voluntarily consents to proceed in the absence of counsel. While the applicability of *Massiah* to this situation is difficult since Woods was in state custody and there were no federal charges pending when the F.B.I. agents interviewed him, we need not reach the issue in light of Woods' waiver of his right to counsel.

Prior to his interrogation, the defendant was informed of his constitutional rights, including his right to have counsel present and his right to refuse to answer any questions. After receiving full *Miranda* warnings, Woods chose to speak without counsel present to the F.B.I. Because we find that Charles Woods made a clear, unequivocal, and voluntary waiver of any right to counsel, his statement was properly admissible. *See United States v. Brown*, 569 F.2d 236 (5th Cir. 1978); *United States v. Lord*, 565 F.2d 831 (2d Cir. 1977); *United States v. Diggs*, 497 F.2d 391 (2d Cir.), *cert. denied*, 419 U.S. 861, 95 S.Ct. 112, 42 L.Ed.2d 96 (1974).

## II

Defendants next contend that the trial judge should have declared a mistrial because of unfairly prejudicial remarks by the prosecutor in his opening statement. The record reveals that in a pretrial conference the prosecutor informed the court that the defendants had participated in the robbery of the Consolidated Sales Company in Louisville. Since the modus operandi of that robbery and the bank robbery were substantially the same, the prosecutor desired to introduce evidence of the Consolidated robbery to help identify the defendants as the perpetrators of the bank robbery.

After hearing arguments from counsel and reviewing case authority, the district court ruled that the evidence of the prior robbery would be admissible for the purpose of corroborating other government evidence on the question of defendants' identity as the bank robbers. F.R.Evid. 404(b). Consistent with this ruling, in his opening statement to the jury the prosecutor indicated that evidence regarding the Consolidated robbery would be introduced to help establish the identity of the bank robbers.

No evidence concerning the Consolidated robbery was introduced during the first day of trial. In another conference prior to commencement of the second day of trial, defendants' counsel prevailed upon the court to reconsider its ruling permitting introduction of the evidence of the Consolidated robbery. Upon reconsideration, the court decided to exclude this evidence. At that time defendants' counsel requested that the court either declare a mistrial or issue a cautionary instruction regarding the prosecutor's reference to the Consolidated robbery in his opening statement. The trial judge denied both requests, stating that he did not want to emphasize the remark and that defense counsel could argue against it in their closing arguments to the jury.

■ Prior crimes evidence is admissible if there was a "plan" (an agreement to com-

7. The record reveals that Woods initially refused to leave his cell when officer Camfield went for him on October 7th and accompanied him only after the officer had obtained a court order directing the jailer to release Woods for questioning. However, it appears that Woods' reason for refusing to go was the fact that the jail guard had told him that the officers were going to put him in a lineup and charge him with some more robberies. Once Woods understood that he was only going to be interviewed, whatever reluctance he had about accompanying the officers appears to have vanished.

mit a series of crimes) or a "signature" (a device so unusual or distinctive as to be like a signature). F.R.Evid. 404(b). We find the circumstances of this case reveal a "signature" on the crimes insofar as each was an armed robbery by robbers wearing ski masks, goggles, and jumpsuits and using a stolen vehicle for a getaway car. These factors constitute an unusual and distinctive pattern and since the defendants had been connected to the prior robbery by fingerprints and Woods' confession to it, it would have been permissible to admit that evidence under Rule 404(b).

■ Of course, the district court still had discretion to admit or exclude the prior crimes evidence and it had to weigh the probative value of the evidence against its prejudicial impact. Thus, we do not hold that the district court erred in ultimately excluding the evidence. However, the fact remains that the district court could have properly admitted the prior crimes evidence and we see no prejudice to the defendants from it having been mentioned in the opening remarks. If anything, defendants received a possibly unwarranted benefit by not having the prior crimes evidence admitted at trial.

■ Any decision regarding the declaration of a mistrial rests within the sound discretion of the trial judge. *Illinois v. Somerville*, 410 U.S. 458, 462, 93 S.Ct. 1066, 35 L.Ed.2d 425 (1973); *Gori v. United States*, 367 U.S. 364, 366, 81 S.Ct. 1523, 6 L.Ed.2d 901 (1961). This record reveals no abuse of that discretion. Concomitantly, it was within the district court's discretion to determine whether to give a cautionary instruction. The trial judge chose not to highlight what he perceived to be an error in the opening remarks and we cannot say that he committed reversible error in doing so. The trial judge allowed defense counsel to argue to the jury that the government had said it was going to produce such evi-

dence but did not. The fact that defense counsel did not avail themselves of this opportunity suggests that they, too, felt that the matter should not be emphasized.

### III

■ At trial the defendants objected to the presence of several firearms and ammunition on the basis that the items were not sufficiently connected to the bank robbery, rendering them inadmissible and highly prejudicial. These weapons and ammunition were marked for identification before the jury and remained in the courtroom even though the judge refused to admit the handguns and ammunition into evidence.[8] Counsel for the defendants moved for a mistrial based on the display of guns and ammunition, but did not move for a cautionary instruction. This motion was denied. Defendants now contend that the unsuccessful attempts by the prosecutor to introduce the handguns and ammunition into evidence constituted prosecutorial misconduct which warrants reversal. We disagree.

This court has often expressed its disapproval of the practice of some prosecutors of deliberately injecting inadmissible prejudicial evidence into criminal trials and thereby jeopardizing otherwise strong cases. *See United States v. Millen*, 594 F.2d 1085 (6th Cir. 1979); *United States v. O'Donnell*, 510 F.2d 1190, (6th Cir.) *cert. denied*, 421 U.S. 1001, 95 S.Ct. 2400, 44 L.Ed.2d 668 (1975) (concurring opinion); *United States v. Smith*, 500 F.2d 293 (6th Cir. 1974); *United States v. Calvert*, 498 F.2d 409 (6th Cir. 1974); *United States v. Nemeth*, 430 F.2d 704 (6th Cir. 1970); *United States v. Rudolph*, 403 F.2d 805 (6th Cir. 1968); *United States v. King*, 378 F.2d 359 (6th Cir. 1967) *cert. denied*, 396 U.S. 974, 90 S.Ct. 465, 24 L.Ed.2d 443 (1969); *United States v. Benson*, 369 F.2d 569 (6th Cir.

---

8. The problem with the guns and ammunition apparently started when the prosecution was permitted to retain in the courtroom during trial items which had been the subject of an in camera hearing as to their admissibility. It appears that these items might well have been retained in the courtroom only because the prosecutor suggested he had nowhere else to put them, although the Judge permitted him to retain only those items he intended to introduce.

1966). In this case, however, we cannot conclude that the prosecutor engaged in improper overkill creating an atmosphere wherein it was impossible for the defendants to receive a fair trial. To the contrary, the record reveals good faith attempts by the prosecution to link the guns and ammunition to the bank robbery.

Witnesses of the bank robbery testified that the bank robbers had a pistol and a sawed-off shotgun when they entered the bank. Two .38 caliber ammunitions rounds and one .32 caliber round of ammunition were found in the bank's parking lot where the getaway car waited for the bank robbers. A shotgun shell was later discovered in the getaway car. When defendant Woods was arrested he told the Louisville police and F.B.I. agents where they could find the shotgun. The location supplied by Woods was the residence of defendant Underwood. During a search of Underwood's residence the police found a sawed-off shotgun, a jumpsuit, two loaded .38 caliber revolvers, and three .32 caliber rounds of ammunition. When Davis, the getaway car driver, testified at trial he stated that he had a .32 caliber pistol in his possession at the time of the robbery. A .38 caliber pistol was discovered in the search of Davis' residence.

██ A principal issue at trial was the identification of the defendants as the bank robbers. The proof that upon arrest by the police, based on information supplied by defendant Woods, Underwood had .38 caliber revolvers, a sawed-off shotgun and a jumpsuit in his possession was relevant to that issue as the term is defined in F.R. Evid. 401. As evidence which could link the defendants to the crime, it tended to make their participation in the robbery "more probable . . . than it would be without the evidence." 

Regardless of the relevance of the evidence, Underwood's possession of the firearms and ammunition could have been admissible under F.R.Evid. 404 on the independent ground that it tended to show he had the "opportunity" to commit the bank robbery, since he had access to weapons similar to those used to commit it. This ground was recognized by the court in *United States v. Ravich*, 421 F.2d 1196 (2d Cir.), *cert. denied*, 400 U.S. 834, 91 S.Ct. 69, 27 L.Ed.2d 66 (1970), in upholding the admission of the defendant's possession upon arrest of guns and ammunition other than those used in the bank robbery.

> Direct evidence of such possession would have been relevant to establish opportunity or preparation to commit the crime charged, and thus would have tended to prove the identity of the robbers, the only real issue in this trial.

*Ravich*, 421 F.2d at 1204.

Notwithstanding the relevance of the guns and ammunition, the trial judge was justified in excluding them if he decided that their probative value was outweighed by the danger of unfair prejudice. He might well have done so in this case, but that decision by no means dictates that the prosecutor's efforts to introduce the evidence were improper. It was neither unreasonable nor improper for the prosecutor to have attempted to submit the firearms and ammunition given their unquestionable potential relevance. As such, we find no evidence of prosecutorial misconduct warranting reversal.

## IV

We must also address Underwood's contention that the district court erred in denying his motions for acquittal on grounds of insufficiency of the evidence. *See United States v. Scott*, 437 U.S. 82, 98 S.Ct. 2187, 57 L.Ed.2d 65 (1978). This contention revolves around the admission of evidence regarding the grand jury testimony of codefendant Joseph Davis. It appears that in testifying before the grand jury, Davis named himself and defendants Woods and Underwood as the three perpetrators of the robbery. During Woods' and Underwood's trial, Davis was called as a witness by the prosecution. He testified that he had plead guilty to the robbery charge and had been sentenced under the Youthful Offenders Act. But when questioned as to the names of the other participants, Davis answered,

"Neal and Summers."[9] Since the firearms and jumpsuit seized during the search of Underwood's residence were never positively identified as the ones used in the robbery, Davis' testimony before the grand jury apparently was the only direct evidence linking Underwood to the robbery.

At the end of Davis' trial testimony, there was a hearing in chambers on Underwood's prior motion for acquittal on grounds of insufficiency of the evidence. Underwood's counsel argued that since the witness never testified to having been sworn and since the grand jury transcript or other proof showing that he had was not produced, the prosecution had failed to prove that Davis' grand jury testimony was given under oath. Thus, argued Underwood's attorney, the testimony was mere hearsay and could not be submitted as substantive proof.

Acknowledging that the evidence against Underwood was perhaps "a little flimsey," (sic) the trial judge concluded that it was sufficient to submit the case to the jury. The court then ruled that Davis' prior inconsistent statements could also be considered by the jury as substantive evidence. ▮ Since it was established that Davis' prior inconsistent statement was made in testimony before a grand jury, it would appear that, in the absence of proof to the contrary, we can presume that he had been properly sworn at the time. *See Keith v. State*, 53 Ohio App. 58, 4 N.E.2d 220 (Ct. of App.1936). And since sworn testimony before a grand jury is not hearsay, Rule 801(d)(1)(A), F.R.Evid., Davis' prior inconsistent statement was admissible as substantive evidence. *See United States v. Mosley*, 555 F.2d 191 (8th Cir. 1977), *cert. denied*, 434 U.S. 851, 98 S.Ct. 163, 54 L.Ed.2d 120 (1978). In light of these circumstances the district court acted properly in sending the case to the jury. *See United States v. Palacios*, 556 F.2d 1359, 1364 (5th Cir. 1977).

We have examined the defendants' other contentions and find them to be without merit. Accordingly, the judgments of conviction are affirmed.

KEITH, Circuit Judge, dissenting.

I respectfully dissent on two grounds from the majority's opinions affirming appellants' convictions. First, the trial court failed to give a cautionary limiting instruction to the jury concerning the limited use of prejudicial "common pattern or scheme" evidence of defendants' prior involvement in another bank robbery. Secondly, evidence unconnected to the offense for which defendants were being tried, and which had not been properly admitted into evidence, was permitted to remain in the courtroom during trial within the purview of the jury. These two errors, when taken together, were sufficiently prejudicial to defendants' right to a fair trial that a reversal of defendants' convictions is warranted.

I.

The first of these errors centers around a statement by the prosecutor in his opening remarks to the jury. The record reveals that in a pretrial conference, the prosecutor advised the court that defendants had participated in the robbery of the Consolidated Sales Company in Louisville and that, since the modus operandi of that robbery and the bank robbery in question were substantially the same, the prosecutor desired to introduce evidence of the other robbery to help

---

**9.** At this point the prosecutor questioned Davis regarding the persons named as the other participants in his grand jury testimony in an attempt to impeach his trial testimony:

> Q. Did you previously testify before a federal grand jury?
> A. I did.
> Q. And were you asked whether or not you had been involved in this same robbery?
> A. I was.

> Q. And did you tell that federal grand jury that you had been involved?
> A. I did.
> Q. And did you give them the names of any persons who were involved?
> A. I did.
> Q. What names did you give the federal grand jury?
> A. Charles Woods and Gerald Underwood.

identify defendants as the perpetrators of the bank robbery.[1]

After hearing arguments from counsel and reviewing case authorities, the district court ruled that the evidence of the prior robbery would be admitted for the purpose of corroborating other evidence on the question of defendants' identity as the bank robbers. In conformity with this ruling, the prosecutor mentioned in his opening statement to the jury on the first day of trial that evidence regarding the Consolidated robbery would be introduced to help establish the identity of the bank robbers.

Prior to commencement of the second day of trial, defendants' counsel prevailed upon the court to reconsider its prior ruling permitting introduction of the evidence of the other armed robbery. Upon reconsideration, the court decided to exclude this evidence. Thereupon, defendants' counsel requested that the court either declare a mistrial or give a cautionary instruction regarding the prosecutor's prior reference to the other robbery. The trial judge refused both requests, stating that he did not want to emphasize the remark and that defense counsel could argue against it in their summations to the jury.

A trial court is permitted to admit evidence of prior crimes to show motive, intent, absence of mistake or inadvertence, identity of the offender, or a common plan, pattern or scheme. *F.R.Evid. 404(b)*. The court has wide-ranging discretion in determining which fact patterns constitute such exceptions to the general rule barring admission of evidence of a criminal defendant's prior misconduct. *See United States v. Nemeth*, 430 F.2d 704 (6th Cir. 1970); *United States v. Wells*, 431 F.2d 432 (6th Cir. 1970); *United States v. Birns*, 395 F.2d 943 (6th Cir. 1968); *United States v. Neal*, 344 F.2d 254 (6th Cir. 1965).[2]

Assuming that the district court did not abuse its discretion in finding that a jumpsuit, ski mask, goggles and stolen vehicle constituted a signature and therefore properly admitted evidence concerning the Consolidated robbery, error was committed by the trial court's failure to give limiting instructions concerning such evidence to the jury. The majority ignores established authority in our Circuit that when prior crimes evidence is admitted, a limiting instruction must be given:

"The exceptions, when properly applied, are justified by a legitimate need for the evidence that outweighs the perils of undue prejudice to the accused. In reaching this accommodation the law naturally seeks to shield the accused from unnecessary prejudice. Accordingly, the admission of evidence of a defendant's prior acts of bad conduct, under the specified exceptions, requires limiting instructions cautioning the jury not to consider the evidence for improper purposes. *United States v. Nemeth, supra* ; *United States v. Sims*, 430 F.2d 1089, 1092 (6th Cir.). *United States v. Ring*, 513 F.2d 1001 (6th Cir. 1975)." *United States v. Yopp*, 577 F.2d 362, 365 (6th Cir. 1978) (reversing defendants' convictions on grounds that it was error for judge to fail to admonish jury that they could only take the evidence admitted of a related crime into account in determining the existence of a common plan, and not to prove that defendant *Yopp* had acted on it in relation to the counts on which he was charged.)

*See also Dawson v. Cowan*, 531 F.2d 1374 (6th Cir. 1976) (failure of a trial

---

1. It appears that modus operandi similar to that used in the bank robbery in question, was used in the robbery of the Consolidated Sales Company, 1407 West Jefferson, Louisville, Kentucky: four armed robbers wearing ski masks, goggles and jumpsuits. It also appears that the robbers used a stolen vehicle in each instance to get to and away from the place of the robbery.

2. I believe that, in the circumstances of this case, the evidence regarding the Consolidated robbery was inadmissible and that the trial court was correct in so ruling on reconsideration. *See United States v. Phillips*, 599 F.2d 134 (6th Cir. 1979). In my judgment, a jumpsuit, ski mask and goggles are not sufficiently distinctive to constitute a "signature." Neither is the act of using a stolen vehicle in the commission of a robbery unusual.

judge to give cautionary instruction to the jury on the limited use to which they could put evidence of a prior felony conviction was held to constitute plain error, and warranted reversal of defendants' conviction.)

While I sympathize with the district court's concern not to unduly emphasize the prosecutor's statement regarding the Consolidated robbery, I am of the view that curative steps in the form of a cautionary instruction, either immediately or in the court's final instructions to the jury, were necessary and appropriate in the circumstances of this case. For unlike the situation in *United States v. Andrea*, 538 F.2d 1255 (6th Cir. 1976), the statement involved here was ambiguous and had tremendous potential for adversely affecting substantial rights. In *Awkard v. United States*, 122 U.S.App.D.C. 165, 352 F.2d 641 (D.C. Cir. 1965) the D.C. Circuit commented strongly on this issue:

> "Intimations of past crimes, especially crimes similar to the crime charged, are extremely damaging to an accused. . ." (The Court went on to reverse appellant's conviction, stating that even "[c]autionary instructions, copiously provided by the trial judge in this case, do not give the accused adequate protection. They cannot prevent the jury from considering prior actions in deciding whether appellant has committed the crime charged.") 122 U.S.App.D.C. at 169–170, 352 F.2d at 645–646.

And as the admissibility of this evidence in the first instance would have been conditioned on the presence of appropriate cautionary instructions, *United States v. Nemeth*, 430 F.2d 704–705 (6th Cir. 1970), the need for a cautionary instruction here appears all the more clearly.

## II.

I am also persuaded that defendants' trial was unfairly tainted by the prosecutor's deliberate injection of inadmissible and highly prejudicial evidence. The record shows that the prosecution brought three hand guns and a shotgun into the courtroom when only one was definitely linked up with the robbery.[3] Ammunition retrieved from the guns was marked for identification before the jury although it was never admitted into evidence.[4] Additionally, the prosecutor tried to link the bullets and shotgun shells retrieved from the guns with bullets found in the bank parking lot through testimony of an F.B.I. expert on lead analysis.

Finally, the prosecutor exhibited the jumpsuit seized during the search of Underwood's residence even though one defendant had confessed to having burned the clothing used in the robbery and the prosecution's photo expert testified that he could not say positively that this jumpsuit was one of those pictured in photos of the robbery taken by the bank's scanning camera. The jumpsuit was paraded before the jury even though the prosecutor himself did not believe that it was used in the robbery.[5]

3. It appears that two revolvers were recovered during the search of Underwood's residence with a third revolver being obtained from the third co-defendant at the time of his arrest. While the third co-defendant stated that he carried a gun during the robbery, the gun in court was never proved to be the one he then carried. Further, while there were four guns in court, it appears that only two played a part in the robbery and none of the guns introduced in court were definitely shown to have been used in the robbery.

4. The problem with the guns and ammunition apparently started when the prosecutor was permitted to retain in the courtroom during trial items which had been the subject of an in camera hearing as to their admissibility. It appears that these items might well have been retained in the courtroom only because the prosecutor suggested he had nowhere else to put them. While the Judge permitted him to retain only those items he intended to introduce, it is not clear that the prosecutor had any purpose here other than to capitalize on the prejudicial impact of having these items paraded before the jury.

5. In his closing argument, the prosecutor stated:

> "Now, Mr. McWade told you when Mr. Wood confessed that he said they burned the jumpsuits. Now, I do not believe that this is the same jumpsuit but it's a similar jumpsuit and it establishes one more link, just one more link there."

This court has often expressed its concern about the practice of some prosecutors of deliberately injecting prejudicial evidence not properly admitted into criminal trials and thereby jeopardizing otherwise strong cases. *See United States v. Millen*, 594 F.2d 1085 (6th Cir. 1979); *United States v. O'Donnell*, 510 F.2d 1190, (6th Cir. 1975) *cert. denied*, 421 U.S. 1001, 95 S.Ct. 2400, 44 L.Ed.2d 668 (1975) (concurring opinion); *United States v. Smith*, 500 F.2d 293 (6th Cir. 1974); *United States v. Calvert*, 498 F.2d 409 (6th Cir. 1974); *United States v. Nemeth*, 430 F.2d 704 (6th Cir. 1970); *United States v. King*, 378 F.2d 359 (6th Cir. 1967) *cert. denied*, 396 U.S. 974, 90 S.Ct. 465, 24 L.Ed.2d 443 (1969); *United States v. Benson*, 369 F.2d 569 (6th Cir. 1966). I believe that the prosecutor in this case engaged in improper over-kill and that this tactic created an atmosphere in the courtroom wherein it was impossible for the defendants to receive a fair trial. *See Calvert, supra ; Nemeth, supra.*

While defendants made a motion for a mistrial on the basis of this conduct, at no time did either request a cautionary instruction. Relying on Rule 52(b) F.R.Cr.Pro., defendant Woods contends that, in light of the prosecution's improper over-kill with the introduction of the guns and ammunition, the court should have instructed the jury on what it could properly consider as evidence in deciding the case and that the court's failure to so instruct the jury constituted plain error.

The majority did not find plain error here, *see Smith, supra*, 500 F.2d at 297, *Kotteakos v. United States*, 328 U.S. 750, 764–765, 66 S.Ct. 1239, 90 L.Ed. 1557 (1945), *see also Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). However, it should have, at the very least, recognized that this failure had the clear potential to affect substantial rights and that, given the confusing circumstances surrounding the evidence exhibited at this trial (the large quantity of evidence and the fact that some items were admitted and some rejected while all were marked for identification in the presence of the jury), the judge should have provided a clarifying instruction as to what the jury might properly consider as evidence in the case, even absent a request.

As this court stated in *Smith, supra,* "This is not a case involving merely the prejudice that might be expected to result from improper admission of 'cumulative' evidence of appellant's guilt, e. g., *United States v. Haskins*, 345 F.2d 111, 116 (6th Cir. 1945), but instead involves evidence of 'the type which infuriates or inflames a jury.'" (Citations omitted) 500 F.2d at 297. Whether the prosecutorial over-kill would have been made harmless by a cautionary instruction from the court I need not decide. *See Smith, supra* at 296–297.

### III.

The trial judge's failure to take curative action regarding the prosecutor's reference to the Consolidated Sales robbery in his opening statement, in conjunction with the prejudicial atmosphere created by deliberate "prosecutorial over-kill" and the judge's failure to give clarifying instructions regarding what was to be considered by the jury as evidence in the case, resulted in an unfair trial.

I note that if I were considering any one of the misadventures occurring at trial in isolation, it might be possible to affirm these convictions. However, I am of the view that in combination, they created an atmosphere which tainted defendants' right to receive a fair trial. Since proof of defendants' guilt is not overwhelming, I would reverse their convictions.

MERRITT, Circuit Judge, concurring.

I concur in Judge Celebrezze's opinion for the Court. But on two points my reasoning would be slightly different in emphasis.

With respect to the prosecutor's opening remarks about the other robbery, I agree that this evidence should have been admitted under Rule 404(b) as evidence of "other crimes, wrongs or acts" for the purpose of proving identity. Except on the ski slopes, not many people walk around with goggles, a ski mask and a jumpsuit on. Although it is not unusual for a bank robber to attempt

to conceal his identity by using a hood, bandana or ski mask, the combination of goggles, ski mask and jumpsuit is sufficiently distinctive and unusual to meet the "signature" requirement which this Court has adopted. *United States v. Phillips*, 599 F.2d 134, 136–37 (6th Cir. 1979). Since the evidence was admissible, I do not think that the District Court had "discretion" to exclude it. Since the evidence should have been admitted, I do not think the prosecutor's opening statement referring to the evidence was improper.

Likewise, I think the .32 and .38 caliber pistols and the sawed-off shotgun should have been admitted. There was evidence that the robbers used a .32 caliber pistol, a .38 caliber pistol and a sawed-off shotgun in the robbery of the bank. The fact that these weapons plus a jumpsuit were found during a search of Underwood's residence was clearly relevant on the issue of his identity as one of the bank robbers. It corroborated the testimony of Davis at the grand jury that he, Woods and Underwood robbed the bank. These weapons were admissible and I do not agree that the trial judge was justified in excluding them from evidence. Since the evidence was admissible, the prosecutor did not act improperly in bringing it to the courtroom and having it ready for introduction.