791 F.2d 932
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
CHARLES ANTHONY DURHAM, Defendant-Appellant,
v.
UNITED STATES OF AMERICA, Plaintiff-Appellee.
 84-5552
 United States Court of Appeals, Sixth Circuit.
 4/1/86
 
 AFFIRMED
 E.D.Ky.
 On Appeal from the United States District Court for the Eastern District of Kentucky
 Before: ENGEL, Circuit Judge; PHILLIPS* and PECK, Senior Circuit Judges.
 ENGEL, Circuit Judge.
 
 
 1
 Anthony Charles Durham appeals his conviction in the United States District Court for the Eastern District of Kentucky of bank robbery, possessing, receiving and storing a stolen firearm that was moving in interstate commerce, possession of a firearm with an obliterated serial number, and conspiracy.
 
 
 2
 While the facts of this case are more fully developed in this court's opinion in United States v. Murphy, 763, F.2d 202 (6th Cir. 1985), we will briefly recite the facts particularly relevant to this appeal. In the early morning of October 11, 1983, two employees of the Boone State Bank in Florence, Kentucky, were robbed at gunpoint as they prepared to transfer deposits from the night depository to an armored car for delivery to the Bank's nearby branch office. Shortly after the robbery, a police officer observed two men in a green van approach Charles Anthony Durham as he sat parked in his brown van in the parking lot of a Ramada Inn near the scene of the robbery. Durham's van displayed a mural of the south seas, and prominently bore the name, 'Polynesian Lady.' As the vans pulled away, Durham was arrested. Backup officers recovered the green van, and codefendants David Murphy and Rene Stauffer were later apprehended. Inside Durham's van the police found, among other things, a modified dent puller, similar to the type used to steal two vehicles used in the robbery, an emergency band radio scanner, a listing of police radio frequencies, and two handcuff keys that each fit one to the handcuffs used in the robbery. Inside the green van the police found various items, including a loaded machine gun and several handguns, a Boone State Bank deposit bag and a Boone State Bank envelope containing money, and coveralls and ski masks matching the description of those worn by the robbers. The day after their arrest, Durham, Murphy and Stauffer were indicted on six counts.
 
 
 3
 On the day trial was scheduled to begin, Durham filed a pro se motion to sever his case from that of his codefendants and for the appointment of counsel. He alleged that severance was necessary because multiple representation created a conflict of interest. The trial judge granted Durham's motion, and his case was continued, while the other defendants' trial proceeded.
 
 
 4
 Less than two weeks after the motion to sever was granted, the government returned an 11-count superseding indictment against Durham. Durham filed a motion to dismiss the superseding indictment, alleging prosecutorial vindictiveness. He also filed a motion to sever Count 3 of the superseding indictment which charged him with being a convicted felon in possession of a firearm. Although the court granted the motion to sever Count 3, it denied the motion to dismiss the superseding indictment.
 
 
 5
 After the government had presented its case at trial, Durham moved for judgments of acquittal on all counts. The court granted his motion on Counts 4 through 9, which charged him with interstate transportation of stolen motor vehicles, receipt, concealment and disposal of stolen motor vehicles, possession of a machine gun, not registered to him, and possession of a handgun. The court denied the motion on Count 1, which charged him with a number of conspiracies; Count 2, which charged him with armed bank robbery; Count 10, which charged him with possession of another handgun; and Count 11, which charged him with receipt, concealment and storage of a third handgun. At the conclusion of the evidence, the jury returned guilty verdicts on the four remaining counts.
 
 
 6
 On appeal, Durham raises four issues. First, he argues that the trial court improperly allowed the government to impeach his testimony with evidence of a 1967 bank robbery conviction for which he was incarcerated until 1973. Second, he asserts that the trial court improperly admitted evidence of prior crimes and bad acts. Third, he claims that there was insufficient evidence to support his convictions, and fourth, he argues that the filing of the superseding indictment was vindictively motivated in reaction to his successful motion for a separate trial.
 
 I.
 
 7
 Durham challenges the admission under Fed. R. Evid. 609 of a conviction for bank robbery for which he was incarcerated until December 23, 1973. During cross-examination, Durham admitted using a mask, weapons and a police scanner in that robbery. Rule 609(b) creates a rebuttable presumption that convictions more than ten years old are more prejudicial then helpful and should be excluded. '[T]hey often shed little light on the present tendency of the witness towards truthfulness and veracity.' United States v. Sims, 588 F.2d 1145, 1148 (6th Cir. 1978). If this presumption is overcome, the trial judge must find on the record from specific facts and circumstances that the probative value of the evidence substantially outweighs the danger of unfair prejudice. Sims at 1149.
 
 Rule 609(b) states:
 
 8
 (b) Time limit
 
 
 9
 Evidence of a conviction under this rule is not admissible if a period of more than ten years has elapsed since the date of the conviction or of the release of the witness from the confinement imposed for that conviction, whichever is the later date, unless the court determines, in the interest of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect. However, evidence of a conviction more than 10 years old as calculated herein, is not admissible unless the proponent gives to the adverse party sufficient advance written notice of intent to use such evidence to provide the adverse party with a fair opportunity to contest the use of such evidence.'
 
 
 10
 We conclude that the district court in this case erred in admitting, for purposes of impeachment, evidence of the 1967 bank robbery conviction. In the present circumstances taken as a whole, however, we conclude that this error was harmless. Initially, we note that although the conviction was more than ten years old, it exceeded the ten-year limit of Rule 609(b) by only four months, since Durham was released from custody for the 1967 conviction on December 23, 1973, and was brought to trial on the present charges on April 23, 1984. Additionally, we believe that the evidence offered against Durham was compelling.
 
 
 11
 A resident of the area testified that he notified the bank that each day for several weeks before the robbery, in the early morning, he observed the 'Polynesian Lady' in the parking lot near the Boone State Bank. One of the arresting officers testified that, in response to notice from the bank, he investigated the area early one morning and met Durham and another man in the 'Polynesian Lady.' He further testified that in separate conversations they gave conflicting reasons for their presence in the parking lot. Witnesses also established Murphy's and Stauffer's trail from the robbery to their apparent renderzvous with Durham, and another arresting officer testified that both vans began to drive away when they became aware of his presence.
 
 
 12
 The contents of Durham's van, including a police radio scanner and a list of local police radio frequencies, also linked him to Murphy, Stauffer and the robbery. Among other things in Durham's van, the police found a dent puller with a screw inserted in it, which a special agent from the Firearms and Tool Marks Unit of the FBI laboratory testified would leave marks similar to those found on the ignition switches of the green van and another stolen car used in the robbery. Furthermore, carpet fibers found on Murphy's and Stauffer's clother matched samples of carpet taken from Durham's van. Perhaps most compelling of all, each of the handcuff keys found in Durham's van fit one of the pairs of handcuffs used to restrain the bank employees after the robbery. We believe that this, along with other evidence offered against Durham, was sufficiently compelling that the court's error did not affect any of Durham's substantial rights.
 
 II.
 
 13
 Durham also contends that this testimony regarding his 1967 robbery conviction and other evidence of prior misconduct was inadmissible under Fed. R. Evid. 404.
 
 Rule 404(b) states:
 
 14
 (b) Other crimes, wrongs, or acts
 
 
 15
 Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
 
 
 16
 In addition to the 1967 robbery conviction, Durham admitted during cross-examination to a felony conviction in Florida involving his van, a police scanner and a gun, and participation in a 1981 incident in which Indianapolis police found Durham and David Murphy in a parking lot near a bank, in possession of guns, masks, and a police scanner. The court admonished the jury to consider the convictions only as they pertain to Durham's credibility, but also instructed that other acts admitted could be used to determine 'intent, opportunity, preparation, plan, knowledge, or absence of mistake or accident of the defendant.' Moreover, the court specifically emphasized that the jury was not to infer from this evidence that Durham had a criminal propensity or bad character.
 
 
 17
 We do not find error here. The similarities between the admitted prior acts and acts charged in the indictment were sufficiently distinctive to constitute a 'signature,' and therefore were admissible to show at least intent, plan or identity under Rule 404(b). United States v. Phillips, 599 F.2d 134,136 (6th Cir. 1979); United States v. Woods, 613 F.2d 629 (6th Cir. 1980). In Woods, the court concluded that a robbery revealed a 'signature' when the robbers were armed and used ski masks, goggles, jumpsuits and a stolen getaway car. 'These factors constitute an unusual and distinctiive pattern . . ..' Woods, 613 F.2d at 635. In the present case, we are presented with equally unusual and distinctive common factors. However, even if it were error to admit this prior acts evidence, we are convinced for the reasons given above that it was harmless. We accordingly also conclude that the evidence was sufficient to sustain Durham's convictions.
 
 III.
 
 18
 Durham's final charge alleges that the prosecutor vindictively filed the superseding indictment against him in retaliation for his successful motion for severance. Since neither party offers direct evidence in support of its position, this claim turns upon the propriety, under the circumstances, of a presumption of vindictiveness.
 
 
 19
 We believe the present circumstances do not pose a realistic or reasonable likelihood of vindictiveness, and consequently do not warrant the imposition of a prophylactic presumption of vindictiveness. United States v. Goodwin, 457 U.S. 368 (1982). See also Thigpen v. Roberts, 468 U.S. 27 (1984). Although Durham's successful motion for severance required some repetition of prosecutorial efforts, in that it compelled relitigation of issues common to Durham, Murphy and Stauffer, we do not believe that this burden, viewed in this pretrial context, was likely to elicit a vindictive response.
 
 
 20
 Certainly, the burden of repeating prosecutorial efforts can support a presumption of vindictiveness. Blackledge v. Perry, 417 U.S. 21 (1974); see also North Carolina v. Pearce, 395 U.S. 711 (1965). owever, in the present case, even if tried together, the proofs relevant to Durham, Murphy and Stauffer would have differed substantially. The duplication of effort necessitated by separate presentation of common issues and facts was not so great here as to be reasonably likely to elicit a vindictive response. Furthermore, the severance did not compel the prosecution to retry a defendant already once convicted, Blackledge, supra, or otherwise 'do over that which it thought it had already done correctly.' Colten v. Kentucky, 407 U.S. 104, 117 (1972).
 
 
 21
 Finally, the Supreme Court has noted the importance of pretrial prosecutorial discretion and has cautioned against presumptions of vindictiveness at that stage.
 
 
 22
 There is good reason to be cautious before adopting an inflexible presumption of prosecutorial vindictiveness in a pretrial setting. In the course of preparing a case for trial, the prosecutor may uncover additional information that suggests a basis for further prosecution or he simply may come to realize that information possessed by the State has a broader significance. At this stage of the proceedings, the prosecutor's assessment of the proper extent of prosecution may not have crystallized.
 
 
 23
 Goodwin at 381.
 
 
 24
 In the present case, the prosecution could have discovered additional evidence to support the additional charges of the superseding indictment or could have come to recognize the full significance of information it already possessed not only from the pretrial investigation, but also from the trial of Murphy and Stauffer. In fact, Durham sought severance precisely because his and his codefendants' defenses at least potentially conflicted. It is also possible that the additional charges of the superseding indictment do not reflect vindictive motivation, but rather the prosecution's original desire to avoid misjoinder.
 
 
 25
 In sum, we do not find that Durham's pretrial motion for severance was reasonably likely to have elicited a vindictive response in the form of the prosecution's superseding indictment. Since we find no basis for a presumption of vindictiveness, and Durham offers no objective evidence that the prosecution acted vindictively in filing the superseding indictment, we conclude that no violation of due process has been established.
 
 
 26
 Accordingly, we affirm.
 
 
 
 *
 Judge Phillips died August 3, 1985. While he participated in oral argument and in the conferences that followed and had indicated his concurrence generally in the result reached here, Judge Phillips did not have an opportunity to review the opinion itself before he died