33 F.3d 55
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Donald HOLLOWELL, Defendant-Appellant.
 No. 93-5566.
 United States Court of Appeals, Sixth Circuit.
 Aug. 18, 1994.
 
 Before: MARTIN, NELSON, and DAUGHTREY, Circuit Judges.
 BOYCE F. MARTIN, Jr., Circuit Judge.
 
 
 1
 Donald Hollowell appeals his convictions for conspiracy to possess with the intent to distribute crack cocaine, possession with the intent to distribute crack cocaine, and use of a firearm during the commission of a drug-trafficking crime. Hollowell maintains that the evidence presented at trial was insufficient to support a finding that he was guilty of the crimes for which he was convicted. In addition, Hollowell alleges that the district court should have granted a mistrial because a witness, whose anticipated testimony the government outlined in its opening statement, subsequently failed to testify. For the following reasons, we affirm the judgment of the district court.
 
 
 2
 * The evidence adduced at trial established the following facts. On the afternoon of December 17, 1992, Detective Bill Matthews of the Athens, Tennessee Police Department received a telephone call from an informant. As a result of information provided by the informant, Matthews went to the corner of Howard and Tell Streets in Athens, where he spotted Carlos Mimmis. After Matthews found a loaded .380 caliber pistol and a pill bottle containing eight rocks of crack cocaine during an initial pat-down search of Mimmis, Matthews placed Mimmis under arrest.
 
 
 3
 As Matthews continued to search Mimmis on the street corner, a blue Suzuki Samurai drove down the street towards them. Hollowell, subsequently identified as the driver and owner of the Samurai, and Derrick Whitlock, the only passenger, quickly realized that Mimmis was in police custody. Upon making eye contact with Matthews, Hollowell stopped the vehicle, backed up, turned around, and fled down a side street. Matthews then turned Mimmis over to another police officer and gave chase. After running a stop sign, Hollowell skidded sideways to a halt in the driveway of a residence at the end of a cul-de-sac.
 
 
 4
 Hollowell and Whitlock were taken into custody, at which time a search of Hollowell revealed that he was carrying eighty-six $20 bills. During a search of Hollowell's vehicle, police discovered eight rocks of crack cocaine secreted in a speaker and packaged like those found on Mimmis, and an ammunition clip for a .380 caliber pistol in the glove compartment. Hollowell also possessed a key to a motel room.
 
 
 5
 In a subsequent search of Hollowell's motel room, police found a plastic bag containing approximately thirteen rocks of crack cocaine. The bag had been placed between the bed railing and the box spring of one of the beds, but, because the bed linens were turned down, was otherwise visible to occupants of the room. Also in plain view, on a dresser, was a police scanner, which was tuned to the Athens police broadcast channel. The search further uncovered: (1) a large rock of crack cocaine, found above one of the ceiling tiles; (2) two razor blades, of the type often used to cut large rocks of cocaine into smaller pieces, wedged between the base of a lamp and a wall; and (3) a .25 caliber semi-automatic pistol, and ammunition for it, in a nylon bag belonging to Hollowell.
 
 
 6
 While being detained at the Athens Police Department, and in an effort to improve his standing with the authorities, Hollowell informed Matthews that he was willing and able to arrange a controlled sale of cocaine to Alex Porter, a man with whom Hollowell had served in the military. Apparently, nothing came of this proposal.
 
 
 7
 Although he denied taking part in the charged conspiracy, Hollowell testified at trial that he did travel with Mimmis and Whitlock from Hopkinsville, Kentucky, arriving in Athens at approximately 1:00 a.m. on December 17. At that time, Hollowell rented the motel room that the three men shared and the police ultimately searched.
 
 II
 
 8
 On February 23, 1993, a federal grand jury returned a superseding, five-count indictment against Hollowell, Mimmis, and Whitlock. Count One charged the defendants with conspiracy to possess with the intent to distribute crack cocaine, in violation of 21 U.S.C. Secs. 841(a)(1) & 846. Count Two charged the defendants with possession with the intent to distribute crack cocaine, in violation of 21 U.S.C. Sec. 841(a)(1) and 18 U.S.C. Sec. 2. Counts Three and Four charged the defendants with using the .380 caliber pistol found on Mimmis' person and the .25 caliber semi-automatic pistol found in Hollowell's luggage, respectively, during the commission of a drug-trafficking crime, in violation of 18 U.S.C. Sec. 924(c). Hollowell was not named in the fifth count of the indictment.
 
 
 9
 After Mimmis entered a guilty plea to Count One of the indictment, Hollowell's and Whitlock's joint jury trial began on March 2. In his opening remarks, the Assistant United States Attorney prosecuting the case briefly described the charges against the defendants, and then stated:
 
 
 10
 We're going to prove this case to you in two different ways. First of all, we're going to prove through the testimony from the outside of the conspiracy. Three Athens Police Department officers will testify as to what they saw, and then we're going to come back and prove it a second way from inside the conspiracy.
 
 
 11
 Carlos Mimmis was the third Co-Defendant in this case. He has pled guilty. He has a plea agreement which requires him to testify and he will testify as a co-conspirator of these two gentlemen just exactly what happened from the inside of the conspiracy.
 
 
 12
 The prosecutor then summarized in some detail the physical evidence and the testimony of the police officers that the government would present, or what the prosecutor had characterized as the proof "from the outside of the conspiracy." Following this summary, the prosecutor explained for approximately an equivalent amount of time the anticipated testimony of Mimmis, or what the prosecutor had dubbed the government's proof "from inside the conspiracy." Mimmis, the prosecutor told the jury, would testify that he travelled with Hollowell and Whitlock from Hopkinsville to Athens because a warrant had been issued in Kentucky for Whitlock's arrest, and Whitlock wanted to "lay low" for a while. Hollowell, Mimmis would explain, provided the large rock of crack cocaine found in the motel room, suggested that the three men sell crack in Athens, and cut smaller, distribution-size rocks from the large rock. Mimmis would further testify that he was selling crack on the corner of Howard and Tell Streets pursuant to an agreement to do so on behalf of Hollowell and Whitlock. Finally, Mimmis would recount to the jury that Hollowell gave him $2,000 to testify falsely in a previous state court proceeding that all of the crack possessed by the three men in fact belonged to Mimmis. In conclusion, the prosecutor stated "[t]hat's a brief summary of the two ways we will approach this case and prove to you in two ways beyond a reasonable doubt that the Defendants are guilty as accused in the indictment in this case."
 
 
 13
 After the government rested without presenting Mimmis' testimony, Hollowell moved for a mistrial and Whitlock moved for an acquittal. The district court granted Whitlock's motion, but denied Hollowell's. On March 4, the jury found Hollowell guilty on all four counts of the indictment in which he was named. On April 6, the district court denied Hollowell's motion for a new trial. On April 26, Hollowell was sentenced to seventy-eight months of imprisonment on Counts One and Two, to run concurrently, and sixty months of imprisonment on Counts Three and Four, to run concurrently to each other but consecutively to the sentence imposed for Counts One and Two, for a total of eleven and one-half years of imprisonment. This timely appeal followed.
 
 III
 
 14
 * Hollowell initially challenges the sufficiency of the evidence presented at trial. In criminal cases such as this one, we look only to whether after reviewing "the evidence in the light most favorable to the government, any rational trier of fact could have found the elements of the crime beyond a reasonable doubt." United States v. Beddow, 957 F.2d 1330, 1334 (6th Cir.1992) (citing Jackson v. Virginia, 443 U.S. 307, 319 (1979)). Indeed, even "circumstantial evidence alone is sufficient to sustain a conviction and such evidence need not 'remove every reasonable hypothesis except that of guilt.' " United States v. Ellzey, 874 F.2d 324, 328 (6th Cir.1989) (quoting United States v. Stone, 748 F.2d 361, 363 (6th Cir.1984)).
 
 
 15
 Given this deferential standard, we believe that the evidence at trial was more than sufficient to support the finding that Hollowell possessed with the intent to distribute crack cocaine, and that he conspired with Whitlock and Mimmis to commit this crime.
 
 
 16
 Hollowell also claims that the evidence was insufficient to support his conviction for both his own use of the .25 caliber semi-automatic pistol, and aiding and abetting Mimmis' use of the .380 caliber pistol during the defendants' commission of a drug-trafficking crime. With respect to the first of these claims, this Court has held that the terms "uses" and "carries" in Section 924(c)(1) " 'should be construed broadly to cover the gamut of situations where drug traffickers have ready access to weapons with which they secure or enforce their transactions.' " United States v. Head, 927 F.2d 1361, 1366 (6th Cir.) (quoting United States v. Acosta-Cazares, 878 F.2d 945, 952 (6th Cir.), cert. denied, 493 U.S. 899 (1989)), cert. denied, 112 S.Ct. 144 (1991). Thus, if it reasonably appears that a firearm found on premises controlled by a drug offense offender, and in his actual or constructive possession, was to be used to protect the drugs or otherwise facilitate a drug transaction, then the firearm was used during and in relation to a drug-trafficking crime. United States v. Clemis, 11 F.3d 597, 602 (6th Cir.1993) (citing United States v. Henry, 878 F.2d 937, 944 (6th Cir.1989)), cert. denied, 114 S.Ct. 1858 (1994). Here, the .25 caliber pistol was found in a motel room rented and occupied by Hollowell, in which the police also found a large rock of crack cocaine, distribution-size rocks of crack, and razors used to cut the larger rock. Moreover, the pistol was discovered, along with ammunition for it, in a bag belonging to Hollowell at the foot of one of the room's beds. Viewing these facts in the light most favorable to the government, we believe it reasonable to conclude that the weapon, which was readily accessible, was to be used to facilitate the goals of the drug conspiracy. Accordingly, we find sufficient evidence to support Hollowell's conviction for using and carrying the .25 caliber pistol during and in relation to a drug-trafficking crime.
 
 
 17
 Turning to the second claim, Hollowell may be held liable for Mimmis' use of the .380 caliber pistol if that use was foreseeable and in furtherance of the charged conspiracy. United States v. Christian, 942 F.2d 363, 367 (6th Cir.1991) (holding one coconspirator accountable for another's use of a firearm in furtherance of the conspiracy under the doctrine articulated in Pinkerton v. United States, 328 U.S. 640, 646-47 (1946)), cert. denied, 112 S.Ct. 905 (1992). This Court has previously acknowledged the " 'well recognized nexus between drugs and firearms.' " Id. at 368 (quoting United States v. Golter, 880 F.2d 91, 94 (8th Cir.1989)). Consequently, under the facts here, and particularly in light of our finding that the pistol in Hollowell's luggage was used or carried to facilitate his crack cocaine dealing, we believe that Mimmis' decision to carry .380 caliber pistol while selling crack cocaine was foreseeable by Hollowell. We find sufficient evidence, therefore, to support Hollowell's conviction for aiding and abetting Mimmis' use of the .380 caliber pistol in furtherance of the conspiracy.
 
 B
 
 18
 Next, Hollowell argues that the district court erred in denying his motion for a mistrial on the ground that the prosecutor described anticipated testimony in his opening remarks to the jury that the government ultimately failed to provide. We review the denial of a motion for a mistrial under an abuse of discretion standard. United States v. Chambers, 944 F.2d 1253, 1263 (6th Cir.1991), cert. denied, 112 S.Ct. 1217 (1992). Abuse of discretion, in turn, "is defined as a definite and firm conviction that the trial court committed a clear error of judgment." Logan v. Dayton Hudson Corp., 865 F.2d 789, 790 (6th Cir.1989). We have also emphasized that "a determination of the fairness to the accused is the primary concern in ruling upon a mistrial motion." United States v. Atisha, 804 F.2d 920, 926 (6th Cir.1986), cert. denied, 479 U.S. 1067 (1987).
 
 
 19
 In Frazier v. Cupp, 394 U.S. 731, 733-37 (1969), the Supreme Court considered a claim similar to that asserted by Hollowell here. In rejecting the argument that the prosecutor's summary of anticipated, but unproduced, testimony constituted error, the Court observed that the summary in question was "not emphasized in any particular way; it took only a few minutes to recite and was sandwiched between a summary of petitioner's own confession and a description of the circumstantial evidence the State would introduce." Id. at 733. The Court noted further that the prosecutor's opening statement was no more than an objective account of the evidence he reasonably expected to produce, and concluded that:
 
 
 20
 [a]t least where the anticipated, and unproduced, evidence is not touted to the jury as a crucial part of the prosecution's case, "it is hard for us to imagine that the minds of the jurors would be so influenced by such incidental statements during this long trial that they would not appraise the evidence objectively and dispassionately."
 
 
 21
 Id. at 736 (quoting United States v. Socony-Vacuum Oil Co., 310 U.S. 150, 239 (1940)).
 
 
 22
 Addressing the same issue in a subsequent case, this Court emphasized first the distinction between a challenge to anticipated, but unproduced, testimony and a claim of prosecutorial misconduct. See United States v. West, 486 F.2d 468, 471-72 (6th Cir.1973) (observing, for example, that defendant had not alleged that the prosecutor made his opening statement in bad faith without any reasonable expectation of presenting the promised evidence), cert. denied, 416 U.S. 955 (1974). After recounting the Supreme Court's analysis in Frazier, this Court noted that in the case before it: (1) the summarized testimony was "was not isolated in the opening statement but, instead, was an integrated part of a statement that fairly summarized all the evidence ... that the prosecution intended to present;" (2) both the prosecutor and the district court advised the jury that the opening statement was not evidence and should not be regarded as such; and (3) the witness whose testimony was summarized did in fact testify, although he did not provide the evidence the prosecution had anticipated he would, and was offered for cross-examination. West, 486 F.2d at 472. Under these circumstances, the Court rejected the defendant's claim that he was denied a fair trial, concluding that the prosecutor "did not overstep the line drawn by Frazier." Id. In dicta, however, this Court went on to observe that:
 
 
 23
 this case alerts us to the potential danger presented by a too-detailed opening statement. If a failure of proof should occur, the jury in its deliberations might consider, as if it had been given, the testimony it was told to expect from a witness even though that witness did not testify.
 
 
 24
 Id. Thus, the Court warned, "if a court apprehends a substantial danger of a jury's doing so, the prosecution risks a mistrial or reversal of a conviction." Id.
 
 
 25
 With Frazier and West in mind, we consider whether, despite the prosecutor's summary of Mimmis' unproduced testimony, Hollowell received a fair trial. Here, we are troubled somewhat by the fact that the prosecutor devoted almost half of his opening statement to describing Mimmis' testimony, the prosecutor described the testimony in some detail, and Mimmis never took the stand. Numerous factors, however, militate against a finding that the government's failure to produce Mimmis' testimony warranted a mistrial. Initially, at the beginning of his opening statement, the prosecutor explained to the jury that the government would prove its case first using evidence from outside the conspiracy, and then also "in a second way" using evidence from the inside of the conspiracy in the form of Mimmis' testimony. As suggested by this comment, the prosecutor proceeded to describe the physical evidence and the officer testimony that the government would produce, and only afterwards to summarize Mimmis' testimony. There is no reason to believe, nor has Hollowell even alleged, that this summary was anything more than an objective account of testimony that the prosecutor reasonably expected to produce. At the conclusion of his statement, finally, the prosecutor reiterated that the government would be able to prove Hollowell's guilt beyond a reasonable doubt using either the evidence from outside or inside the conspiracy.
 
 
 26
 Also supporting the determination that the district court should not have granted Hollowell's motion for a mistrial is the fact that the court cautioned the jury, both at the beginning and at the end of the trial, not to consider statements by counsel as evidence. See United States v. Wright, 16 F.3d 1429, 1443 (6th Cir.) (jury is presumed to follow the instructions presented), cert. denied, 114 S.Ct. 2759 (U.S.1994). Although Hollowell argues that the district court should have given the jury an additional and specific curative instruction regarding the prosecutor's opening remarks, we note, as did the district court, that Hollowell apparently did not request such an instruction below. Moreover, we have found it within a trial judge's discretion not to give a specific curative instruction regarding a prosecutor's summary in his opening statement of anticipated, but unproduced, evidence on the ground that to do so would highlight any potential error by unduly emphasizing those remarks. See United States v. Woods, 613 F.2d 629, 635 (6th Cir.) (affirming district court's decision not to give such an instruction regarding defendant's confession and fingerprint evidence alluded to by prosecutor in opening statement, but subsequently held inadmissible), cert. denied, 446 U.S. 920 (1980).
 
 
 27
 Finally, the government's failure to produce Mimmis' testimony after the prosecutor promised to do so in his opening remarks may well have harmed the government more than it prejudiced the defendant. United States v. Akin, 562 F.2d 459, 466 (7th Cir.1977) ("we think the Government rather than the defendant was hurt by [the government's] failure of proof), cert. denied, 435 U.S. 933 (1978); cf. Woods, 613 F.2d at 635 (observing that when the government was not allowed to produce evidence previously alluded to by prosecutor, "[i]f anything, defendants received a possibly unwarranted benefit by not having the prior crimes evidence admitted at trial"). In fact, Hollowell's counsel realized the potential benefit to his client of the missing testimony here, and, as was counsel's prerogative, pointed out the government's failure to produce Mimmis in his final argument to the jury.
 
 
 28
 Given these facts, and the strong evidence of Hollowell's guilt, we do not believe that the district court committed a clear error in judgment in finding that Hollowell received a fair trial. Accordingly, the district court did not abuse its discretion in denying Hollowell's motion for a mistrial.
 
 IV
 
 29
 For the foregoing reasons, the judgment of the district court is affirmed.